IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RAEKWON THORNTON,<br><br>  Plaintiff,<br><br>v.<br><br>CO E. MUIR,<br><br>  Defendant. | Civil Action No.: SAG-21-1587 |

## MEMORANDUM OPINION

Self-represented plaintiff Raekwon Thornton, a Maryland prisoner, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Corrections Officer Eric Muir. ECF No. 1, 1-2 (Complaint).[1] Thornton alleges that while he was housed at North Branch Correctional Institution ("NBCI") he was improperly exposed to a chemical agent when defendant Muir sprayed pepper spray into his cell during a dispute over a portable telephone. *Id.* In Thornton's view, Muir's deployment of pepper spray was excessive and unnecessary. ECF No. 1-2 at 5.

Muir has moved to dismiss or for summary judgment (ECF No. 17), supported by a memorandum (ECF No. 17-1) (collectively, the "Motion") and exhibits. Thornton opposes the Motion. ECF No. 23.[2]

---

[1] Thornton attached copies of Administrative Remedy Procedure ("ARP") documents that further detail the incident outlined in the Complaint. A court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Paradise Wire & Cable*, 918 F.3d at 318. Notably, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.

[2] On December 14, 2022, the Court denied Thornton's Motion to Amend Complaint (ECF No. 20), construed his proposed amended complaint as a response in opposition to Muir's Motion to Dismiss, or in the Alternative, for Summary Judgment, and granted Thornton additional time to supplement his response. ECF No. 22. Two days later, on December 16, 2022, Thornton mailed a letter to the Court stating that he had not received a response to his motion to amend the complaint. ECF Nos. 28, 28-1. That letter was not received by the Court until February 7, 2023 due to being incorrectly addressed. ECF No. 28-2. It appears likely that the Court's December 14, 2022 Order and Thornton's December 16, 2022 letter crossed in the mail and that Thornton did receive the Court's Order regarding his Motion to Amend.

No hearing is necessary to address the Motion. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, the Motion will be granted.

**Background**

On November 25, 2020,Thornton was in his cell with his cellmate, Antonio Moore, using a portable telephone provided by correctional officers. ECF No. 1-2 at 5. While they were using the phone, Thornton claims that Muir approached them "in an aggressive manner yelling that [his] time was over to use the phone which suppose [sic] to be an hour of use." *Id*. Thornton further alleges that "[a]s a dispute occurred Officer E. Muir became frustrated due to [Thornton's] request to speak with a supervisor . . . several times. While [Thornton was] holding the phone to avoid it from just dangling Officer E. Muir pulled the base of the portable phone . . . causing a slight tug back immediately Officer Muir begin [sic] spraying mase [sic] a large amount." *Id*. Thornton states that "Officer Muir actions violates the Eighth Amendment. It was excessive force used to maliciously and sadistically cause harm to [Thornton] and his cellmate." *Id*. In his response in opposition to defendant's dispositive motion, Thornton alleges that Muir made the statement "dumb nigger" as he deployed the pepper spray. ECF No. 23.

Thornton filed a timely administrative remedy procedure complaint ("ARP") regarding the incident, which was dismissed with the finding that no excessive force was used. ECF 1-2. He appealed the dismissal to the Commissioner of Correction, and an investigation was conducted. ECF No. 17-8 at 7. Following the investigation, the assigned investigator concurred with the Warden's response to the ARP, finding that there was no excessive force. *Id*. at 8. Thornton then appealed the decision to the Inmate Grievance Office ("IGO"), which dismissed his appeal. ECF

No. 17-9 at 7, 14.  As relief here, Thornton seeks $100,000 in damages as well as the removal of Muir from NBCI.  ECF No. 1 at 3.

Muir filed a Motion to Dismiss, or in the Alternative, for Summary Judgment arguing that Thornton has not stated a claim of excessive force; there was no excessive force used; he is immune from suit in his official capacity under the Eleventh Amendment; and he is entitled to qualified immunity.  ECF Nos. 17, 17-1.  In support, Muir submits records including use of force incident reports (ECF No. 17-3), video of the incident (*id.*)[3], medical records (ECF No. 17-6), Intelligence and Investigation Division ("IID") reports (ECF No. 17-7), ARP records (ECF No. 17-8), and IGO records (ECF No. 17-9).

Muir states that on November 25, 2020, he was "running phones" on the A-Wing bottom level.[4]  ECF No. 17-3 at 18 (Muir, Use of Force Incident Report).  At approximately 4:03 p.m., he gave the phone to Cell 1-A-26, and wrote down 4:10 p.m. on his timer, providing extra time to allow the inmates to get connected.  *Id*.  At approximately 5:15 p.m., Muir and Officer Kelly Ringler went to Cell 1-A-26 to move the phones to the next cell.  *Id*.  When Muir approached Cell 1-A-26, inmate Moore was still on the phone, and Thornton was arguing that they only used 30 minutes and that they needed 30 more minutes.  *Id*. at 18-19.  Muir ordered Moore to pass the phone through, and he refused and yelled at Muir, telling him to get the Sergeant.  *Id*. at 19.  Muir ordered Moore three more times to pass the phone out of the cell.  Next, Muir states that:

> Inmate Moore then slammed the receiver down inside their cell, and said '[t]ake the damn phone.'  I started to pull the phone, and its receiver out of the cell.  When the receiver was almost out of the slot, Inmate Moore grabbed onto the receiver end of the phone and attempted to break the receiver and cord off the base station by pulling the receiver further back into the cell.  When Inmate Moore pulled the receiver back into the cell, I had my hand on the base station, and it caused me to be pulled towards the cell.  Inmate Moore then stated 'you want this phone, you

---

[3] The video is filed separately and is not available on CM/ECF.
[4] Muir's statement can be found in his use of force incident report, (ECF No. 17-3 at 18-19), which he declares to be true and correct (ECF No. 17-4).

> can fucking have it,' and drew the receiver back in an attempt to throw the phone receiver towards Officer K. Ringler and I. In fear of Officer K. Ringler's safety and mine, I immediately deployed pepper spray using my MK9 Fogger towards Inmate Moore's direction through the security slot. Immediately after being sprayed, Inmate Moore released his grip on the phone receiver, and I was then able to remove the phone from inside the cell.

*Id*. Muir then ordered both inmates to come to the door to be handcuffed, and they complied. *Id*. Thornton and Moore were strip-searched, and escorted to medical and a decontamination shower. *Id*. at 13-14 (Sergeant Earl Ritchie, Use of Force Incident Report), 17 (Officer Joshua Plum, Use of Force Incident Report). They were then returned to their assigned cell without incident. *Id*. at 14. Moore was charged with a rules violation and pleaded guilty; Thornton was not cited. ECF No. 17-3 at 27; 17-7 at 2.

Following the incident, Thornton signed a release of responsibility form indicating that he was refusing a physical examination and a vital signs check against the advice of medical personnel.[5] ECF No. 17-6 at 14. The form states that "[p]atient stated that he was fine and didn't need to see medical for an assessment." *Id*. at 15. More than a week later, on December 3, 2020, Thornton submitted a sick call request stating that he has chest pain and cannot breathe due to COVID-19 and being sprayed with "mase." *Id*. at 18.

The video evidence confirms that there was an ongoing discussion between the officers and Thornton and Moore while the portable phone was in their cell.[6] Video, ECF No. 17-3. Officers can be seen talking to inmates in the cell for several minutes, and hands are seen moving in and out through the slot in the door. *Id*. During the discussion, officers attempt to move the telephone unit away from the cell, but are unable to do so as the phone line is still reaching into

---

[5] Thornton contends that he did not know what he was signing because he could not see due to the pepper spray in his eyes. ECF No. 23 at 2. He also states that the form was to decline a decontamination shower; however, the form makes no mention of a decontamination shower. *Id*.; ECF No. 17-6 at 13-14.
[6] The video does not include audio.

the cell. *Id*. On the last attempt, the unit is seen moving abruptly back toward the cell door, at which point an officer takes something from his belt and reaches into the cell for 2-3 seconds. *Id*. Presumably, this reflects Muir administering pepper spray into the cell. The officers then move the telephone unit away from the cell and walk away. *Id*. They return less than two minutes later and remove Thornton and Moore from the cell. *Id*. Though Thornton and Moore cannot be seen inside the cell during the incident, it is clear that the officers were encountering difficulty in retrieving the portable phone. *Id*.

**Standards of Review**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Muir's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Motions styled in this manner implicate the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Muir filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Thornton was on notice that the court could treat the motion as one for summary judgment and rule on that basis. Accordingly, the court will review the claims against

6

Muir under the Rule 56(a) standard and will consider the exhibits filed in support of the dispositive motions.

The court informed Thornton that he may file an opposition and advised him of the consequences of failing to do so. ECF No. 18. Thornton subsequently filed a motion to Amend the Complaint. ECF No. 20. However, because the proposed amended complaint did not make any new claims and seemed responsive to Muir's motion, the proposed amended complaint was construed as a response in opposition and docketed as such. ECF Nos. 22, 23. Thornton was provided with additional time to supplement his response, but he chose not to do so. ECF No. 22.

The court is mindful that Thornton is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir.1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## Discussion

Thornton claims that Muir used excessive force when he sprayed Thornton and his cellmate, Moore, with a fogger without justification. ECF No. 1. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). The court must look at the need for the application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison

7

officials, and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

A corrections officer acts in a "'good faith effort to maintain or restore discipline,'" *i.e.*, with "a permissible motive," when confronting "immediate risks to physical safety" and when attempting to "'preserve internal order' by compelling compliance with prison rules and procedures." *Brooks*, 924 F.3d at 113 (quoting *Hudson*, 503 U.S. at 6-7). In contrast, the use of force "to punish an inmate for intransigence or to retaliate for insubordination" would "cross the line into an impermissible motive." *Brooks*, 924 F.3d at 113.

Here, according to Muir, chemical agents were used by prison staff to stop an inmate's attempted assault on officers as well as destruction of property. Alternatively, and in the light most favorable to Thornton, the pepper spray was used to maintain order.

Judge Chasanow's explanation of the use of pepper spray in the context of the Eighth Amendment in *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 626–27 (D. Md. 2015), *aff'd*, 644 Fed. Appx. 243 (4th Cir. 2016) is apt here:

> In the context of the use of pepper spray by prison staff, "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted). The use of pepper spray is not "per se a cruel and unusual punishment." *McCargo v. Mister*, 462 F.Supp. 813, 818 (D.Md.1978). It may be used in order to control recalcitrant inmates. *Williams*, 77 F.3d at 763. Analysis regarding the amount of chemical agent used focuses, as with all other excessive force claims, on whether the Defendant acted with a sufficiently culpable state of mind. *Iko*, 535 F.3d at 238 (4th Cir. 2008) (citations omitted) (holding correctional officer not entitled to qualified immunity where additional chemical agent was deployed into inmate's cell after inmate attempted to comply with officer's order, did not react violently, and officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).
>
> Eighth Amendment violations have been found where an officer used more than a reasonable amount of a chemical agent. *See, e.g.*, *Furnace v. Sullivan*, 705

F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier).  However, where an inmate repeatedly ignores official commands, multiple applications of pepper spray have been found reasonable.  *See Williams*, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed.Appx. 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick*, 918 F.Supp. 977, 984 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown).  Use of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution.  *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

Here, the undisputed facts, even as alleged by Thornton, establish that when Muir came to Thornton's cell to retrieve the portable phone, they argued about the time and demanded to see a supervisor.  Neither Thornton nor his cellmate, Moore, turned over the phone upon repeated requests.  While Thornton maintains that no one pulled on the phone or made any move to throw it, Muir declares that Moore tugged on the phone, verbally threatened him, and made moves indicating he would throw the phone.  These are genuine issues of fact, but they are not material.  Even in the light most favorable to Thornton, the pepper spray was deployed during a time when inmates were failing to comply with orders and had possession of the institution's telephone equipment.  The uncontroverted evidence demonstrates that Muir repeatedly ordered Moore and Thornton to turn over the phone.  They did not comply with the orders and continued to protest.  Muir deployed a quick shot of pepper spray to gain compliance, the inmates returned the phone, and were immediately led out of the cell to medical and decontamination showers.  There is no evidence that Thornton suffered any further harm.

Finally, the video confirms that the incident took place in a very short time and that the amount of pepper spray, however painful to those in its reach, was relatively small.  Muir's use of pepper spray falls within the confines of an acceptable amount of force used to gain the inmates' compliance, and was neither excessive nor undertaken maliciously in an effort to cause harm.

Thornton's allegation made for the first time in his oppositional response that Muir stated "dumb nigger" as he deployed the pepper spray, does not alone transform the incident from one of maintaining order to one of cruel and unusual punishment.  *See Carter v. Morris*, 164 F.3d 215, 219, n.3 (4th Cir. 1999) (rejecting use of racial epithets as a basis for constitutional claim).  The language allegedly used by Muir is not condoned by this Court, but it falls short of acts forbidden by the Fourth, the Fourteenth, or the Eighth Amendments.  *See Pink v. Lester*, 52 F.3d 73, 75 (1995) ("[N]ot all undesirable behavior by state actors is unconstitutional.").  Accordingly, Muir is entitled to summary judgment.

## Conclusion

Based on the foregoing, and by separate Order which follows, Muir's motion to dismiss or, in the alternative, for summary judgment (ECF No. 17) is granted.  Summary judgment is granted in favor of defendant Muir.[7]

February 23, 2023                                  /s/
Date                                               Stephanie A. Gallagher
                                                   United States District Judge

---

[7] In light of the foregoing, defendants' additional defenses need not be considered.